UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| JAMES WHITEHEAD,<br><br>Plaintiff,<br><br>vs.<br><br>SAVANNAH RIVER NUCLEAR SERVICES,<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT**<br>(JURY TRIAL REQUESTED) |

Plaintiff would respectfully show unto the Court as follows:

## PARTIES

1. Plaintiff James Whitehead is a citizen of Kansas.

2. Defendant Savannah River Nuclear Solutions, LLC ("SRNS") is a South Carolina LLC with facility located at 203 Laurens Street SW, Aiken, South Carolina.

3. The acts and omissions giving rise to the claim occurred in Aiken County, South Carolina.

## FACT GIVING RISE TO CLAIM

4. SRNS has more than 500 employees and is subject to the responsibilities and prohibitions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 ("Title VII").

5. SRNS employed James Whitehead, Plaintiff, as a Principal Engineer starting in March of 2021.

6. SRNS employed Mr. Whitehead through the staffing agency Hukari Ascendent.

7. SRNS hired Mr. Whitehead knowing that he had thirteen years of experience in nuclear related engineer work and eleven years of experience working for Department of Energy contracted employers.

8. SRNS had the authority to hire and fire Mr. Whitehead.

9. SRNS controlled day-to-day supervision of Mr. Whitehead.

10. SRNS had power to discipline Mr. Whitehead.

11. SRNS furnished the equipment and place of work for Mr. Whitehead.

12. SRNS maintained employment records for Mr. Whitehead.

13. Mr. Whitehead's duties were akin to the duties of regular SRNS employees.

14. Mr. Whitehead was assigned to work solely for SRNS.

15. SRNS was Mr. Whitehead's employer for the purposes of Title VII.

16. Mr. Whitehead performed to the legitimate performance expectations of SRNS at all times while employed.

17. SRNS issued no discipline actions against Mr. Whitehead for performance during his time working for SRNS.

18. In September of 2021, SRNS issued a mandatory COVID-19 ("Covid") vaccine policy for its employees at its Aiken facility.

19. On September 10, 2021, SRNS Human Resources received a religious exemption request from Mr. Whitehead asking that he be exempt from the vaccine policy.

20. The request was on an SRNS provided form that asked:

    a. Please state why you are requesting an exemption/accommodation from the vaccine mandate.

    b. Do your religious principles/practices prevent you from being able to be vaccinated?

    c. If yes to question 2, explain your religious principles/practices and how they prevent you from being vaccinated.

    d. Have you received other vaccines in the past?

    e. If yes to question 4, explain why your religious/practices prevent you from receiving this vaccine.

21. SRNS knew that whether an employee had received prior vaccines was not relevant to whether that employee was eligible for a religious accommodation.

22. SRNS used their vaccine mandate exemption form to inquire if religious exemption requesting employees have ever received prior vaccines despite knowing it was not relevant to religious exemption eligibility.

23. On October 8, 2021, SRNS received a supplement to Mr. Whitehead's religious accommodation request, specifying the nature of his religious objections to the company's vaccine mandate.

24. His October 8 supplement included that he was opposed to receiving the Covid vaccine because using vaccines that were developed or tested using stem cell research methods violated his sincerely held religious beliefs.

25. On October 13, 2021, SRNS denied Mr. Whitehead's accommodation request.

26. SRNS did not communicate with Mr. Whitehead about his religious accommodation request aside from the October 13 denial letter.

27. SRNS did not communicate with Mr. Whitehead to determine what accommodation was possible.

28. SRNS, in its October 13 religious accommodation denial letter, stated "frequent testing in combination with the current masking and social distancing protocols is the sole reasonable accommodation."

29. If SRNS had communicated with Mr. Whitehead, SRNS would have learned that Mr. Whitehead was willing to comply with masking and frequent testing.

30. SRNS, in its October 13 religious accommodation denial letter, stated "SRNS cannot provide the accommodation of testing for you because it imposes an undue burden on SRNS."

31. SRNS did not give any explanation as to why masking and testing would be an undue burden on the company.

32. Mask wearing with frequent testing was a routine method for preventing Covid in workplaces in 2021.

33. An accommodation of masking and testing would not have been an undue burden for SRNS.

34. The burden of granting this accommodation would not result in substantial increased costs to SRNS in relation to the conduct of its particular business.

35. Mr. Whitehead could have performed all of his job duties under this accommodation.

36. In May 2021, the EEOC published guidance for employers considering religious accommodations in light of the Covid pandemic and the newly available vaccines.

37. The EEOC advised employers to ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance.

38. SRNS knew that the EEOC guidance stated that employers should ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance.

39. Because of the EEOC guidance, SRNS knew that its denial of religious accommodation and subsequent termination of Mr. Whitehead might violate federal antidiscrimination law, but chose to deny accommodation and terminate him anyway.

40. Yet when SRNS made the decision to deny Mr. Whitehead's religious accommodation, it did not follow the recent EEOC guidance that had been published on this subject.

41. On information and belief, SRNS denied every single religious accommodation request to the vaccine policy made by every employee.

42. On information and belief, SRNS did not review Mr. Whitehead's religious accommodation request with particularity and instead issued a blanket rejection on all religious accommodation requests without evaluating whether it would be an undue burden.

43. On or about October 16, 2021, SRNS revoked Mr. Whitehead's access to the Aiken facility for failure to comply with the company vaccination policy.

44. SRNS required that all employees receive have their final Covid vaccine injection by November 16, 2021.

45. On or about November 22, 2021, SRNS terminated Mr. Whitehead.

46. SRNS terminated Mr. Whitehead because he did not receive a Covid vaccine by the deadline.

47. By terminating him for failing to vaccinate, SRNS terminated Mr. Whitehead because of his sincerely held religious beliefs.

48. As a direct and proximate cause of SRNS's refusal to accommodate his religious and subsequent termination, Mr. Whitehead suffered economic and noneconomic damages.

49. Mr. Whitehead held a bona fide religious belief that conflicted with an employment requirement.

50. Mr. Whitehead informed SRNS about his belief.

51. SRNS disciplined Mr. Whitehead in the form of termination for failure to comply the conflicting employment requirement.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

52. On April 15, 2022, the Plaintiff filed an EEOC Charge.

53. On September 24, 2024, the EEOC issued a Notice of Rights to Sue.

54. The Plaintiff timely filed this lawsuit within 90 days of receiving the NORTS from the EEOC.

55. The Plaintiff has exhausted his administrative remedies for this case and all of his claims in this action are within the scope of the charge.

## FOR A FIRST CAUSE OF ACTION

Failure to accommodate in violation of Title VII of the Civil Rights Act

56. The Plaintiff re-alleges all foregoing paragraphs as if restated herein verbatim.

57. Mr. Whitehead held a bona fide religious belief that conflicted with an employment requirement.

58. Mr. Whitehead informed SRNS about his belief.

59. SRNS disciplined Mr. Whitehead in the form of termination for failure to comply the conflicting employment requirement.

60. SRNS did not at any point show that it could not accommodate the plaintiff's religious needs without undue hardship.

61. It would not have been an undue hardship for SRNS to accommodate Mr. Whitehead's religious accommodation request.

62. SRNS took adverse employment action against Mr. Whitehead because of his sincerely held religious beliefs.

63. SRNS's actions constituted religious discrimination in violation of Title VII.

64. SRNS's actions against Mr. Whitehead were intentional, knowing, and willful violations of Title VII.

65. As a result of SRNS's actions, Mr. Whitehead suffered economic and noneconomic damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant, for actual, special, consequential damages, interest, and punitive damages in an amount to be determined upon the trial of this case, plus costs of this action, reasonable attorney's fees, and for such other and further relief as this Court might deem just and proper and as permitted by law.

Respectfully submitted,

| | |
|---|---|
| /s/ David A. Nauheim<br>DAVID A. NAUHEIM<br>SC Bar Number 102083<br>NAUHEIM LAW OFFICE, LLC<br>101 Sycamore Ave.<br>Charleston, SC 29407<br>Tel: 843 534-5084<br>Fax: 843 350-3572<br>david@nauheimlaw.com | /s/ Joshua Mangan<br>JOSHUA MANGAN<br>SC Bar Number 104786<br>NAUHEIM LAW OFFICE, LLC<br>101 Sycamore Ave.<br>Charleston, SC 29407<br>Tel: 842 352-3519<br>Fax: 843 350-3572<br>josh@nauheimlaw.com |

December 23, 2024